**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **CRIMINAL ACTION** |
| ) | **NO. 05-1684-CBS** |
| WILGEN ANIBAL BRITO-MELO, ) | |
| a/k/a "Jose Concepcion Navarro", and ) | |
| ANGEL RIVERA, ) | |
| a/k/a "Pinto", a/k/a "Hector Colon", ) | |
| Defendants, ) | |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER OF DETENTION**
**August 4, 2005**

**SWARTWOOD, C.M.J.**

    I.   Nature of the Offense and the Government's Motion

On July 11, 2005, a Criminal Complaint was filed, charging Wilgen Anibal Brito-Melo, a/k/a "Jose Concepcion Navarro" ("Mr. Brito-Melo"), and Angel Rivera, a/k/a "Pinto", a/k/a "Hector Colon" ("Mr. Huerta Soto")[1](collectively "Defendants"), with conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §846.

At these Defendants' initial appearance on July 19, 2005, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for

---

[1]The true name of the person identified in this Complaint as Angel Rivera is Rafael Anselmo Huerta Soto and, except as necessary for the record, I will refer to him in this Memorandum/Order by his true name ("Mr. Huerta Soto").

a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

With the consent of the Defendants, a consolidated probable cause/detention hearing was scheduled for August 3, 2005. The hearing was held on that date and at this hearing, Mark Tully, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Defendants' counsel.

At the conclusion of the hearing, both Defendants stipulated to a finding of probable cause. Furthermore, Mr. Brito-Melo, who had not been interviewed by Pretrial Services and who has an outstanding warrant for deportation against him, assented to an Order of Detention, but reserved his right to re-open the detention portion of the hearing upon a showing that there are new facts which were not known and/or available to his counsel at the time of this hearing.

## II.  Findings of Fact

1.  Since January 2005, members of the DEA have been investigating a large scale drug operation operating in the Boston, Lynn and Lawrence areas of Massachusetts. The investigation

utilized a confidential source (who at some point during the investigation was decommissioned), surveillance, court authorized Title III wire taps of telephones, including a cellular telephone utilized by Mr. Brito-Melo. See Gov't Ex. 1.

2. Telephone calls intercepted in April and May 2005, establish that Messrs. Brito-Melo and Huerta Soto were in the drug trafficking business. See Id.

3. Law Enforcement Officers believed that Mr. Huerta Soto was operating from an apartment located at 290 Quarry Street in Quincy, Massachusetts (the "Target Apartment"); and a detached garage located at that same apartment complex (the "Target Garage").

4. The Target Apartment was leased to Mr. Huerta Soto, under the name "Angel Rivera". Gov't Ex. 3. Although during the investigation, Mr. Huerta visited the Target Apartment and Target Garage for short periods, he resided at an apartment in Dorchester, Massachusetts. When he rented the Target Apartment, Mr. Huerta Soto provided as proof of identification, a Massachusetts driver's license in the name of Angel Resto-Rivera, which listed the Dorchester address as his residence.

5. Agents set up surveillance in an apartment near the Target Apartment. Mr. Rivera was seen entering and exiting the Target Apartment and Target Garage on numerous occasions carrying

bags and/or cases which he would deliver to individuals, some of whom were known to the surveillance agents.

    6.   On July 7, 2005, Mr. Brito-Melo pulled up to the Target Apartment in a white Taurus. Mr. Huerta Soto got into the car with a white bag and they drove away. The white Taurus was later stopped on Rt. 93 South by a Massachusetts State Trooper for a marked lane violation (Gov't Ex. 5)[2]. Mr. Huerta Soto provided the officer with a New Hampshire driver's license in the name of "Hector Colon", see Id., and Mr. Brito-Melo identified himself as "Concepcion Jose Navarro". Mr. Huerta Soto consented to a search of the vehicle, but no contraband was found. Law enforcement officers did find mail addressed to the Target Apartment and a bank statement in the name of "Jose Navarro".

    7.   Other law enforcement agents returned to the area of the Target Apartment and a drug sniffing dog was walked around a blue SAAB, which Mr. Huerta Soto had driven to the Target Apartment and from which he had taken the bag he brought into the white Taurus. The dog alerted positively to the rear hatch area of the automobile. Messrs. Brito-Melo and Huerta Soto were then brought back to the Target Apartment. When questioned, Mr. Huerta Soto indicated that his girlfriend owned both the Taurus and the SAAB and that he was going to lend the Taurus to Mr. Brito-Melo.

---

[2] DEA agents had asked the trooper to watch the white Taurus and to stop it if he observed a traffic violation.

8. Mr. Huerta Soto then consented to a search of the SAAB. In a hidden compartment in the trunk area, law enforcement officers found approximately one ounce of a white substance which field tested positive for cocaine and three separate sets of identifications, which appeared to be Puerto Rican birth certificates and social security cards.

9. Keys found on Mr. Huerta Soto opened the doors to the Target Apartment.

10. On July 8, 2005, search warrants were executed at the Target Apartment, the Target Garage and with respect to a white Volvo station wagon located inside the Target Garage.

11. The following were among those items seized as the result of the searches from the Target Apartment: approximately seven kilograms of cocaine from a hall closet; a loaded 9mm handgun, with an obliterated serial number and a round in the chamber, from a bedside table in the bedroom; approximately Fifty Thousand U.S. Dollars (from a laundry basket mixed in with clothes); various items used in the packaging and sale of illegal drugs, *i.e.*, a cocaine press, cocaine cutting agent, a scale and packaging materials (from the kitchen); and a check book in the name Jose Navarro (an alias known to be used by Mr. Brito-Melo).

### III.  Probable Cause

The Defendants have stipulated that there exists probable cause for the offense charged against them in this Complaint.

IV. The Bail Reform Act

A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481 U.S. 739, 747, 107 S.Ct. 2095 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United

States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the

community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including:

    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

    V.  <u>Discussion of Whether Detention is Warranted</u>

    A.  <u>Mr. Huerta Soto's History and Characteristics</u>

Mr. Huerta was born in the Dominican Republic on October 24, 1974, where he remained until he entered the United States approximately ten years ago. On multiple occasions over the past

ten years, Mr. Huerta Soto traveled back and forth between the United States on a visa, returning to the Dominican Republic when the visa expired.  When Mr. Huerta Soto came to the United States in 2002, he met Ms. Fremia Avalo, who would become his wife, and has remained here to date.  Mr. Huerta Soto is not legally in the United States.  However, he has an application or appeal of his status pending and has a valid employment authorization document.

Mr. Huerta Soto also holds a Spanish passport, as his father was a Spanish citizen, but he last traveled to Spain when he was a child.  Mr. Huerta Soto has been living in Dorchester, Massachusetts for the past year in Section 8 housing, which he obtained under the name Angel Rivera.  For the previous six years, Mr. Huerta Soto lived at another address in Dorchester, Massachusetts.  For the past four years, Mr. Huerta Soto has, at times, lived in an apartment in Lawrence with his wife, step-daughter, mother-in-law, brother-in-law and wife's grandmother.

Mr. Huerta Soto married Ms. Avalo, an American citizen, in 2004[3].  The couple, who are not living together at present, do not have any children, but Ms. Avalo has a daughter from a prior relationship.  Mr. Huerta Soto's father is dead, his mother and two brothers live in the Dominican Republic, and a sister lives in

---

[3] When interviewed, Ms. Avalo knew little personal information about Mr. Huerta Soto.  For example, she stated that he only stayed with her and her family on occasion, and she did not know where he stayed when he was not with her (she has never been to his apartment).

Spain. Mr. Huerta Soto's family owns a house in Spain and an apartment in the Dominican Republic.

Mr. Huerta Soto, who is currently unemployed, worked for five or six years at a market in Dorchester until it went out of business. Mr. Huerta Soto's mother sends him a share of the rent proceeds collected from the properties in Spain and the Dominican Republic.

Mr. Huerta Soto has no known criminal record. Mr. Huerta Soto has used at least two aliases, "Hector Colon" and "Angel Rivera", for which he has possessed official photo identifications (a Massachusetts and New Hampshire license).

C. <u>Nature of the Offense and Weight of the Evidence</u>

Mr. Huerta Soto has stipulated that there exists probable cause for the offense charged against him in this Complaint. Nevertheless, I must still consider the weight of the evidence against him.

I find that Mr. Huerta Soto was intercepted and recorded making telephone calls that linked him to a cocaine trafficking conspiracy. Furthermore, while Mr. Huerta Soto may have grounds to argue for suppression of the cocaine confiscated from the blue SAAB, the Government has presented strong evidence obtained independent of the traffic stop which would have justified the issuance of a search warrant for the Target Apartment. In the Target Apartment, which is clearly linked to Mr. Huerta Soto, law

11

enforcement officials seized approximately seven kilograms of cocaine, a loaded gun, Fifty Thousand U.S. Dollars and items used in the packaging and distribution of illegal drugs. Therefore, I find that the weight of the evidence against Mr. Huerta Soto is substantial.

### D. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C), and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Huerta Soto was released, or the appearance of Mr. Huerta Soto, as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Mr. Huerta Soto is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. Mr. Huerta Soto has stipulated that probable cause exists for the offense charged against him in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Mr. Huerta Soto or the safety of the community if he were released. I further find that Mr. Huerta Soto has not produced nor proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption

alone may justify detention. <u>United States v. Alatishe</u>, 768 F.2d 364, 371 (D.C. Cir. 1985); <u>United States v. Vires</u>, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Mr. Huerta Soto has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that Mr. Huerta Soto poses a danger to the community and a risk of flight.

  E. <u>Whether  Mr. Huerta Soto Poses A Danger to the Community</u>

  Mr. Huerta Soto has been intercepted and recorded participating in a large scale drug conspiracy for the sale and distribution of cocaine.  However, Mr. Huerta Soto does not have a criminal record and has no record of convictions for crimes of violence or prior drug dealing.  Therefore, I am relying on the rebuttable presumption to detain Mr. Huerta Soto on dangerousness grounds.

  F. <u>Whether Mr. Huerta Soto Poses A Risk Of Flight</u>

  Mr. Huerta Soto is an illegal alien and if he is convicted of the offense charged in this Complaint, he faces a substantial period of incarceration and certain deportation following that incarceration.  While Mr. Huerta Soto is married to an American citizen, the couple are not presently living together and do not appear to have a close relationship. Until 2002, Mr. Huerta Soto traveled regularly between the United States and the Dominican Republic, where his mother and two brothers reside.  Mr. Huerta Soto has used at least two different aliases.  Given these

13

circumstances, Mr. Huerta Soto has little or no incentive to remain in this country to face the charges pending against him. Therefore, considering the totality of these circumstances, I find by a preponderance of the evidence that there are no conditions or combination of conditions that I may impose that will assure Mr. Huerta Soto's appearance in this Court as required.

VI.   Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1.   That Messrs. Rivera and Brito-Melo be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.   That Messrs. Rivera and Brito-Melo be afforded a reasonable opportunity for private consultation with counsel; and

3.   On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Rivera and Brito-Melo are detained and confined shall deliver Messrs. Rivera and Brito-Melo to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE